UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-01171-TBR

TIJUANA L. CANDERS                                                                                    Plaintiff,

v.

JEFFERSON COUNTY PUBLIC SCHOOLS, *et al.*                                              Defendants.

## MEMORANDUM OPINION

This matter is before the Court upon the Motion to Dismiss of Defendants Jefferson County Public Schools ("JCPS"), William Bunton, Tamara Bass, Ann Haigler, and Debbie Shontee (collectively, "the JCPS Defendants"). (Docket No. 9). Plaintiff Tijuana L. Canders, proceeding *pro se*, has responded, (Docket No. 11), and the JCPS Defendants have replied, (Docket No. 12). Fully briefed, this matter is ripe for adjudication. For the reasons explained below, the JCPS Defendants' Motion, (Docket No. 9), will be GRANTED.

**Factual Background**

Canders is the mother of B.C. and J.C., both minor children. The children attended Wheatley Elementary ("Wheatley") in Louisville, Kentucky, where they were eligible for special accommodation and related services pursuant to the Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. § 1400 *et seq.* In her Complaint, Canders indicates that her children were afraid to enter their classrooms, perhaps because of their diagnoses of post-traumatic stress disorder, which caused them to experience anxiety in new settings. (Docket No. 1 at 2, 3.) Shontee, a Wheatley staff member, offered to walk them to class. (Docket No. 1 at 2.) Haigler, another Wheatley employee, overheard this exchange and suggested that the children would perhaps benefit from talking with a police officer about the matter, as the police were occasionally called "to speak to the children on a friendly level for encouragement." (Docket No. 1 at 3; Docket No. 11 at 5.) After pointing out that the children's Individualized Education Plans (IEPs) included behavior modifications intended to address such issues, Canders assented to Haigler's suggestion. (Docket No. 1 at 3.)

When Officer Robert Skaggs arrived with Principal Bunton, he instructed Canders to leave the school's premises along with her children, citing the concerns of Wheatley staff that the family was causing a disturbance. (Docket No. 1 at 4-5.) Canders questioned Bunton; Bunton explained, "No crime

1

was committed, but I cannot force your children to go to class. Therefore, I'm asking you to leave." (Docket No. 1 at 5.) Although Canders sought "resources" for her children, Bunton offered no response; Haigler, Shontee, and Bass suggested spanking them. (Docket No. 1 at 5.) Other suggestions included to take seek psychiatric care for the children and to involve Child Protective Services. (Docket No. 1 at 5-6.) After continued conversations and reviewing Canders' identification, Officer Skaggs issued Canders a citation for Criminal Trespassing in the Third Degree.[1]

## Legal Standard

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Furthermore, federal courts hold *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d

---

[1] Although Officer Skaggs is also listed as a Defendant in this action, he has issued no filings to date. Therefore, Canders' claims against Officer Skaggs will not be addressed in this Memorandum Opinion.

2

108, 110 (6th Cir. 1991). However, "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). Accordingly, this Court is not required "to explore exhaustively all potential claims of a *pro se* plaintiff," as this would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278.

**Analysis**

I. **IDEA**

Canders' Complaint first alleges that the JCPS Defendants violated the IDEA by "refus[ing] to provide IEP accomodations."[2] Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To safeguard such children's rights to free appropriate public education, the IDEA requires the development of "IEPs." 20 U.S.C. §§1401(14), 1412(4). An IEP is a written statement for a child with a disability detailing the child's current performance levels, her short-term and long-term goals, the educational and other services to be provided, and the criteria against which her progress will be measured. *See* 34 C.F.R. § 300.343(c) (1995).

The Act requires individual states to establish procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415(a). The IDEA entitles parents concerned with the adequacy of their child's IEP to request a due process hearing to be conducted by the local educational agency. 20 U.S.C. §1415(f). The state educational agency is required to conduct an impartial review of the local educational agency's decision and may take an appeal of it. 20 U.S.C. §1415(g). In Kentucky, a local hearing officer conducts the initial due process hearing; its decision may be appealed to the Exceptional Children Appeals Board. 707 KAR 1:340 § 7, 707 KAR 1:340 § 8. The IDEA establishes that after a complainant has exhausted the state's administrative procedures, she may bring a civil suit in either federal district court or in a state court "of competent jurisdiction." 20 U.S.C. § 1415(i)(2).

---

[2] Canders also contends that the JCPS Defendants did not "provide resources for the children to the mother to receive their education elsewhere citing the mother as trespassing and to leave the premises when no crime was committed." (Docket No. 1 at 1.) The Court assumes that this allegation falls within the

3

Only after a plaintiff exhausts her administrative remedies may she pursue a civil action to enforce her rights under the IDEA. 20 U.S.C. § 1415(l); *see also Doe v. Dublin City Sch. Dist.*, 453 Fed. App'x 606, 608 (6th Cir. 2011); *Long v. Dawson Springs Indep. Sch. Dist.*, 197 Fed. App'x 427, 434-35 (6th Cir .2006); *Donoho v. Smith Cty. Bd. of Educ.*, 21 Fed. App'x 293, 296-97 (6th Cir. 2001). "'Exhaustion' enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.'" *Donoho*, 21 Fed. App'x at 297-98 (quoting *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989)). Should a plaintiff fail to exhaust administrative remedies before filing suit, a court should dismiss the action without prejudice. *Gibson v. Forest Hills Local Sch. Dist.*, 2012 WL 1197896, at *3 (S.D. Ohio Apr. 10, 2012).

The IDEA's exhaustion requirement is particularly broad, encompassing not only claims brought under the Act but also those that *could* have been brought under it.

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (citations omitted). Any claim that relates directly to a student's access to a free appropriate public education is subject to the exhaustion requirement. *Long*, 197 Fed. App'x at 434.

Accordingly, the IDEA requires Canders to first exhaust its administrative procedures and remedies before seeking relief from the Court. Because there is no indication that she has engaged this process, her claims are not yet suitable for judicial review. *See Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 992 (7th Cir. 1996) ("[U]nder the IDEA, education professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls."). Canders explains that she remains unable to return her children to Wheatley, given her citation for trespassing. (Docket No. 11 at 5-6.) This citation, however, does not justify deviation from the "statutorily-prescribed administrative process," which requires her to first seek a due process hearing. *Gean v. Hattway*, 330 F.3d 758, 774 (6th Cir. 2003). Because Canders has not exhausted the relevant administrative procedures, her IDEA claim is untimely and will be dismissed.

## II. Defamation

Canders also seeks damages compensating her family for "defamation of character." (Docket No. 1 at 4.) In her Response, Canders explains that she was "humiliated" by the comments of various Wheatley Elementary School staff members. She points to statements made by various JCPS Defendants, first noting Bunton's acknowledgement that the family had not caused a disturbance but that he could not force unwilling children to go to class. (Docket No. 11 at 4.) Canders then references Bass's advice to take the children to Our Lady of Peace, a psychiatric hospital. (Docket No. 11 at 5.) Next, Canders says that Haigler advised her to contact children services and that the "police [were] called to 'per se' speak to the children on a friendly level for encouragement." (Docket No. 11 at 5.) Finally, Canders points to Shontee's remark, "Do you spank your kids? Because I do not know about you, but I am old school, and if they are not going to behave, then you have to spank." (Docket No. 11 at 5.)

Under Kentucky law, four elements are necessary to establish a claim for defamation: "(1) defamatory language; (2) about the plaintiff; (3); which is published; and (4) which causes injury to reputation." *Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 736 (Ky. Ct. App. 2004) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)); *see also Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). "Defamatory language" is that which "'tends to (1) bring a person into public hatred, contempt, or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business occupation.'" *Stewart v. Pantry, Inc.*, 715 F. Supp. 1361, 1366 (W.D. Ky. 1988) (quoting *McCall v. Courier-Journal & Louisville Times*, 623 S.W.2d 882, 884 (Ky. 1981)).

Although Canders has provided specific statements allegedly made by various JCPS Defendants, the Court concludes that she has failed to plead a viable claim for defamation. However embarrassed or degraded Canders may have felt, exactly what language was defamatory, to whom it was published, and how it injured Canders' reputation remain unclear. Therefore, Canders pleads no specific facts sufficient "to raise a right to relief above the speculative level." *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Her defamation claim will consequently be dismissed.

## CONCLUSION

For the foregoing reasons, the JCPS Defendants' Motion, (Docket No. 9), will be GRANTED. An appropriate Order will issue concurrently with this Opinion.